O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIOMAGIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> DUTCH BROTHERS ENTERPRISES, LLC; AGRAKEY SOLUTIONS, LLC; and JOHN REITSMA, <br><br> Defendants. <br>_____<br><br> AND RELATED ACTIONS <br>_____ | CASE NO. SACV 10-0290 AG (RNBx) <br><br> ORDER DENYING "MOTION TO STAY [A] PENDING ARBITRATION" |

    We are often reminded that our national policy favors arbitration. *See, e.g.*, *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The Federal Arbitration Act ("FAA") "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 16. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Hosp. v. Mercury Cosntr. Corp.*, 460 U.S. 1, 24-25 (1983). "[Q]uestions

of arbitrability [are] addressed with a healthy regard for the federal policy favoring arbitration." *Id*. at 24. And so on.

Though there are trends against arbitration in some areas, the FAA still applies with full force. *See* Nina Yadava, *Note: Can You Hear Me Now? The Courts Send a Stronger Signal Regarding Arbitration Class Action Waivers in Consumer Telecommunications Contracts*, 41 Colum. J.L. & Soc. Probs. 547 (2008). But arbitration is a matter of choice. When drafting agreements to arbitrate, parties may choose for arbitration to be governed by state law rules instead of the FAA. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1211 (9th Cir. 1998).

In this case, the Court must determine whether the parties have made such a choice. The California Arbitration Act has a provision that the FAA lacks. It lets courts, in certain circumstances, stay an arbitration while related litigation is ongoing. Cal. Code Civ. Proc. § 1281.2(c) ("Section 1281.2(c)"); *see Cronus Invs., Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 380 (2005). Here, the Court is asked, under Section 1281.2(c), to stay an arbitration related to this case.

Thus, the Court must determine whether the parties to an arbitration agreement chose for Section 1281.2(c) to govern their agreement. The specific question presented is this: do parties intend to be bound by Section 1281.2(c) when they enter into a contract with (1) an arbitration provision, and (2) a separate choice of law clause specifying that the agreement will be construed under California law? The answer is "no."

Plaintiff and Counter-Defendant BioMagic, Inc. ("Plaintiff") filed this lawsuit for patent infringement. Earlier, it had demanded arbitration for breach of a License Agreement. Defendants and Counterclaimants Dutch Brothers Enterprises, LLC ("Dutch Brothers"), AgraKey Solutions, LLC ("AgraKey"), and John Reitsma ("Reitsma") (collectively "Defendants") now seek to stay that arbitration by filing a "Motion to Stay Pending Arbitration" ("Motion") under Section 1281.2(c). The Motion's title is ambiguous. Motions to "stay pending arbitration" generally seek to stay a lawsuit until an arbitration is resolved, but here the Motion actually seeks to stay *a* pending arbitration until this lawsuit is resolved.

Semantics aside, the Court finds that a stay of arbitration is not appropriate. The Motion

is DENIED.

**BACKGROUND**

Since at least 2001, Plaintiff has produced a product used to "control odors." (Declaration of John Reitsma ¶¶ 3-4.) In 2001, Reitsma bought Plaintiff's product and used it to treat his crop fields. (*Id*. ¶ 4.) A few months later, he states, he discovered "a substantial increase in crop production." (*Id*.)

According to Reitsma, he co-founded Dutch Brothers in 2004 "for the purpose of purchasing the product from [Plaintiff] and reselling it to dairy farmers for odor control and crop enhancement purchases." (*Id*. ¶ 5.) In 2005, Dutch Brothers and Plaintiff entered into a License Agreement where, among other things, Dutch Brothers paid Plaintiff royalties for permission to sell the product. (*Id*. ¶ 6.) In mid-2009, Defendants stopped making royalty payments under the License Agreement, and gave written notice of termination of the License Agreement. (*Id*. ¶¶ 12-13.)

The License Agreement is the focus of this Motion, and two of its terms are worth quoting. There is an arbitration provision that states, "the parties agree to submit any disputes arising form this agreement to final and binding arbitration in a location mutually decided between the parties under the rules of the American Arbitration Association." (Declaration of David C. Watt ("Watt Decl."), Ex. A ¶ 13.1.) And there is a choice of law clause that states, "[t]his Agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the law of the State of California, and any actions to enforce this agreement shall take place in California." (*Id*. ¶ 10.1.)

In November 2009, Plaintiff filed a demand for arbitration, alleging that Defendants breached the License Agreement by, among other things, not making royalty payments. (Declaration of Brent A. Johnson ¶ 16.) In March 2010, a Patent issued for Plaintiff's product, and Plaintiff filed this lawsuit for patent infringement.

**ANALYSIS**

**1.     SECTION 1281.2(c)**

Defendants filed this motion, arguing that the arbitration should be stayed pending this case under Section 1281.2(c). This provision states that, if an agreement to arbitrate a controversy exists, on petition of a party a court shall order arbitration unless:

> A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact.
>
> . . .
>
> If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies.

Cal. Code Civ. Proc § 1281.2. This language has been interpreted to let courts stay arbitrations that are already underway. *See Henry v. Alcove Inv., Inc.*, 233 Cal. App. 3d 94 (1991).

This California rule on arbitration differs from federal arbitration law enshrined in the FAA. There is no FAA counterpart to Section 1281.2(c). Under the FAA, if there's a chance of conflicting rulings in an arbitration and litigation, the court may not stay the arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding by brought in any of the courts of the United States upon any issue referable to arbitration" under a written agreement, on application of a party the court "shall . . . stay the trial of the action until such arbitration has been had . . . .").

But parties may agree to be bound by California's arbitration rules instead of the FAA. The FAA does not require parties to arbitrate "under any specific set of procedural rules." *Cronus*, 35 Cal. 4th at 385. "[P]arties are generally free to structure their arbitration agreements

4

as they see fit. Just as they may limit by contract the issues which they will arbitrate . . . , so too may they specify by contract the rules under which that arbitration will be conducted." *Id.* (citation and quotation marks omitted); *Wolsey*, 144 F.3d at 1211 ("[W]here the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that the arbitration is stayed where the Act would otherwise permit it to go forward. In other words, parties are free to contract around the FAA by incorporating state arbitration rules into their agreements.") (citation, quotation marks, and ellipsis omitted).

## 2.     THE PARTIES' ARGUMENTS

Here, the issue is whether the parties structured their agreement to be governed by Section 1281.2(c). Defendants argue that the License Agreement has a choice of law clause selecting California law, and "courts recognize that where the arbitration agreement is governed by California law, [Section] 1281.2 applies." (Mot. 10:1-3.) But while Defendants make this cursory argument, they barely address whether the parties actually *intended* to be bound by Section 1281.2(c), which is a crucial issue in deciding whether the Court may stay the arbitration.

Plaintiff, of course, disagrees with Defendants' argument. And rightly so. As will become clear, a stay of arbitration is not warranted. But Defendants' request raises a wealth of interesting issues that both parties largely overlook in their papers. For instance, Plaintiff merely argues that "California [Code of] Civil [Procedure] § 1281.2 is inapplicable." (Opp'n ii:9, 6:1, 6:2-22 (emphasis added).) And while Plaintiff argues that "Defendants offer no authority for the position that a Federal Court has authority to stay an arbitration," (Opp'n 4:20-23), this argument misses the mark. A federal court does have authority to stay an arbitration under Section 1281.2(c) *if the parties agreed to be bound by that provision. Wolsey*, 144 F.3d 1205. The parties fail to thoroughly discuss whether the parties here intended to be bound by Section 1281.2(c).

1    Defendants, in their Reply, cite a Supreme Court case that at first seems to support their
2 position, *Volt Information Sciences v. Board of Trustees of Leland Stanford Junior Univ.*, 489
3 U.S. 468 (1989). *Volt* is where things get interesting.

**3.    *VOLT***

*Volt* was a case similar to this one. Procedurally, at least. In *Volt*, Volt Information Sciences and Stanford University had a contract with an arbitration provision and a choice of law clause selecting California law. *Id.* at 470. A dispute arose, and Volt demanded arbitration. *Id.* Stanford sued Volt and two other entities that were not parties to the contract in California state court, and also moved to stay the arbitration under Section 1281.2(c). *Id.* at 470-71. The Superior Court stayed the arbitration, and the Court of Appeal affirmed. *Id.* at 471. It held "that by specifying that their contract would be governed by '"the law of the place where the project is located,"' the parties had incorporated the California rules of arbitration, including § 1281.2(c), into their arbitration agreement." *Id.* at 472. The California Supreme Court declined review. *Id.* at 472-73.

The United States Supreme Court affirmed the Court of Appeal's decision. It held that the FAA did not preempt Section 1281.2(c). But it also *declined to review* the Court of Appeal's determination that the parties intended to adopt Section 1281.2(c). *Id.* at 474 ("Appellant acknowledges, as it must, that the interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review."); *id.* at 476 ("The question remains whether, *assuming the choice-of-law clause meant what the Court of Appeal found it to mean*, application of [Section] 1281.2(c) is nonetheless pre-empted by the FAA . . . .") (emphasis added).

Justice Brennan, joined by Justice Marshall, dissented. First, the dissent stated that the Supreme Court should've reviewed the Court of Appeal's finding that the parties intended to be bound by Section 1281.2(c). *Id.* at 482 ("[T]he Court overlooks well-established precedent to the effect that, in order to guard against arbitrary denials of federal claims, a state court's construction of a contract in such a way as to preclude enforcement of a federal right is not

immune from review in this Court as to its 'adequacy.'") (Brennan, J., dissenting). Then the dissent stated that the Court of Appeal was wrong.

It explained that a standard California choice of law clause does not show that parties incorporated Section 1281.2(c). Its words bear repeating:

> It seems to me beyond dispute that the normal purpose of such choice-of-law clauses is to determine that the law of one State rather than that of another State will be applicable; they simply do not speak to any interaction between state and federal law. A cursory glance at standard conflicts texts confirms this observation: they contain no reference at all to the relation between federal and state law in their discussions of contractual choice-of-law clauses. . . . Decisions of this Court fully bear out the impression that choice-of-law clauses do not speak to any state-federal issue. . . . The great weight of lower court authority similarly rejects the notion that a choice-of-law clause renders the FAA inapplicable. Choice-of-law clauses simply have never been used for the purpose of dealing with the relationship between state and federal law. There is no basis whatever for believing that the parties in this case intended their choice-of-law clause to do so.

*Id*. at 488-90.

### 4. *WOLSEY* AND *MASTROBUONO*

After *Volt*, the Ninth Circuit decided *Wolsey*, and reached the question that the *Volt* majority dodged. It held that inclusion of a California choice of law clause in an agreement with an arbitration provision does not show that parties intended to incorporate Section 1281.2(c). In doing so, the Ninth Circuit relied heavily on the Supreme Court's decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), which was also issued after *Volt*.

In *Mastrobuono*, the parties had a contract with an arbitration provision and a choice of law clause selecting New York law. *Id.* at 58. The Circuit Court interpreted the choice of law clause to incorporate New York's rule that arbitrators, unlike courts, may not award punitive damages, despite the fact that the clause did not reference punitive damages. *Id*. at 54-55 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713 (7th Cir. 1994)).

1   The Supreme Court reversed.  It stated, "[a]s a practical matter, it seems unlikely that
2 petitioners were actually aware of New York's bifurcated approach to punitive damages, or that
3 they had any idea that by signing a standard-form agreement to arbitrate disputes they might be
4 giving up an important substantive right."  *Mastrobuono*, 514 U.S. at 63.  "In the face of such
5 doubt," the Court said it was "unwilling to impute this intent to petitioners."  *Id*.
6   The Supreme Court further discussed the choice of law clause:

> The choice-of-law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship. . . .
> Even if the reference to "the laws of the State of New York" is more than a substitute for ordinary conflict-of-laws analysis . . . , the provision might include only New York's substantive rights and obligations, and not the State's allocation of power between alternative tribunals.

514 U.S. at 60.  Further, reading the choice-of-law provision in context with the arbitration provision, the Court said:

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators.  Thus, the arbitration provision covers the rights and duties of the parties, while the choice-of-law clause covers arbitration; neither sentence intrudes upon the other.

*Id*. at 63-64.

   Applying *Mastrobuono*, *Wolsey* found that Section 1281.2(c) was a "special rule[] limiting the authority of arbitrators," and not a "substantive principle that [California] courts would apply."  144 F.3d at 1212 (quoting *Mastrobuono*, 514 U.S. at 63-64) (alterations in original).  *See also id*. (Section 1281.2(c) "assuredly does affect California's allocation of power between alternative tribunals") (quotation marks omitted).  It thus held that, "[b]ecause *Mastrobuono* dictates that general choice-of-law clauses do not incorporate state rules that

govern the allocation of authority between courts and arbitrators, the district court erred in applying [Section] 1281.2(c)." *Id.* at 1213.

This holding is right on point. A general choice of law clause, without more, does not show that the parties intended to incorporate state procedural rules on arbitration. Under *Wolsey*, Defendants' Motion fails. Defendants have offered no evidence that the parties intended to be governed by Section 1281.2(c). All they do is argue that "since the parties agreed . . . that California law applies, California law governs regarding a say of arbitration in this case." (Reply 2:22-24.) They do not identify any specific language referencing Section 1281.2(c), stays of arbitration, or California arbitration procedure in general. They do not offer any other evidence of the parties' intent. And they do not explain how an adoption of Section 1281.2(c) can be reconciled with the parties' agreement to arbitrate "under the rules of the American Arbitration Association," (Watts Decl., Ex. A ¶ 13.1), which has procedural rules that differ from California's. *See* AAA, Commercial Arbitration Rules R-7 (2010), available at http://adr.org/sp.asp?id=22440#R7 (last visited May 20, 2010); *Preston v. Ferrer*, 552 U.S. 346, 361 (2008) ("Volt never argued that incorporation of [the AAA rules] trumped the choice-of-law clause contained in the contract . . . ."). Defendants' argument fails.

**5.    *CRONUS***

While *Wolsey* is persuasive and controlling, the California Supreme Court decided *Cronus* after *Wolsey*, and *Cronus* would have lent some support to Defendants' argument if they had discussed it in their papers. *Cronus* involved contracts with arbitration provisions and choice of law provisions. Again, a stay of arbitration was sought under Section 1281.2(c) and an argument that the choice of law clause showed the parties' intention to be bound by that provision.

*Cronus* bought the argument. It found "that the choice-of-law provision . . . incorporates California's rules of arbitration into the contract." *Id.* at 387. It accepted *Mastrobuono*'s rule that generic choice of law clauses "encompass substantive principles . . . , but not . . . special

9

rules limiting the authority of arbitrators." *Id*. at 392 (quoting *Mastrobuono*, 514 U.S. at 62). But it disagreed with *Wolsey*'s conclusion that Section 1281.2(c) is a "special rule limiting the authority of arbitrators. *Id*. at 393 (finding Section 1281.2(c) to be "an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties") (emphasis in original). Thus, *Cronus* "decline[d] to follow *Wolsey*." *Id*. at 393 n.8 (also disapproving "*Warren-Guthrie v. Health Net*[, 84 Cal. App. 4th 804 (2000),] and *Energy Group, Inc. v. Liddington*[, 192 Cal. App. 3d 1520 (1987),] to the extent their holdings are predicated on the conclusion that section 1281.2(c) limits the authority of arbitrators and conflicts with the FAA"). *See also Mount Diablo Med. Ctr. v. Health Net of Cal., Inc.*, 101 Cal. App. 4th 711, 726 (2002) (disagreeing with *Wolsey*); *Sec. Ins. Co. of Hartford v. TIG Ins. Co.*, 360 F.3d 322, 328 (2nd Cir. 2004) (relying on *Mount Diablo* and declining to follow *Wolsey* because "the Ninth Circuit relied on its interpretation of *Mastrobuono* to conclude that the choice-of law provision did not incorporate section 1281.2(c)(4)" instead of "predict[ing] how the California Supreme Court would rule on the question of state law"), *cert denied*, 543 U.S. 871 (2004). *But see, e.g.*, *Stone & Webster, Inc. v. Baker Process, Inc.*, 210 F. Supp. 2d 1177 (S.D. Cal. 2002) (following *Wolsey*).

   Although Defendants did not mention *Cronus* in their papers, even if Defendants had relied on *Cronus*, their Motion would fail for multiple other reasons.

**5.1**   *Cronus* **is distinguishable.**

   First, *Cronus* is distinguishable. The choice of law clause here is narrower than the choice of law clause there. There, it stated that the "agreement shall be construed *and enforced* in accordance with and governed by the laws of the state of California . . . ." *Id*. at 387 (emphasis added). *Cronus* relied on the parties' agreement to "enforce" the agreement under California law. *Id*. ("'The explicit reference to enforcement reasonably includes such matters as whether the proceedings to enforce the agreement shall occur in court or before an arbitrator.

10

Chapter 2 (in which § 1281.2 appears) of title 9 of part III of the California Code of Civil Procedure is captioned "Enforcement of Arbitration Agreements." An interpretation of the choice-of-law provision to exclude reference to this chapter would be strained at best.'") (quoting *Mount Diablo*, 101 Cal. App. 4th at 722).

Here, the parties did not agree to "enforce" the agreement under California law. They agreed only that the License Agreement "shall be construed, and the legal relations between the parties [t]hereto shall be determined, in accordance with the law of the State of California, and any actions to enforce this agreement shall take place in California." (Watt Decl., Ex. A ¶ 10.1.) The construction of an agreement and determination of the parties' legal relations are not the same as the *enforcement* of the agreement, which was central to *Cronus*'s holding. Thus, *Cronus*'s holding does not cover this case.

**5.2    *Wolsey* is controlling.**

Second, *Wolsey* is both controlling and more persuasive than *Cronus*. While the California Supreme Court generally has the final word on issues of California's law on contract interpretation, the Ninth Circuit binds this Court on issues of federal law. In *Wolsey*, the Ninth Circuit correctly found that a generic choice of law clause does not incorporate Section 1281.2(c) because it "limits the authority of arbitrators" and "allocat[es] authority between arbitrators and courts." 144 F.3d at 1212-13. *See also Mastrobuono*, 514 U.S. at 67 ("[T]he California rule in *Volt* could be considered to be one that allocates authority between arbitrators and courts . . . .") (Thomas, J., dissenting); Jennifer Treishman, *Note: Horizontal Uniformity and Vertical Chaos: State Choice of Law Clauses and Preemption under the Federal Arbitration Act*, 2005 J. Disp. Resol. 161 (2005) ("The ruling . . . that California's section 1281.2 does not restrict an arbitrator's power, is clearly wrong."). It did so by relying on *Mastrobuono*'s instruction that a contrary finding would impinge parties' federally-protected right to arbitrate disputes where they have agreed to do so. *See Mastrobuono*, 514 U.S. at 62 (majority opinion). The Court is bound by *Wolsey* and *Mastrobuono*.

Moreover, as a practical matter, inclusion of a generic choice of law clause in a contract does not reflect intent to be bound by specific state procedural rules on arbitration that differ from the FAA. *See Supreme Court Addresses* Volt*'s Choice-of-Law Trap: Is the End of the Problem in Sight?*, 64 J. Disp. Resol. 22 (2009) ("Attorneys drafting [choice of law] clauses typically consider the chosen state's substantive law, not its arbitration procedures – which often differ from those of the [FAA]."). *Mastrobuono* recognized this by saying,

> [a]s a practical matter, it seems unlikely that petitioners were actually aware of New York's bifurcated approach to punitive damages, or that they had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right. In the face of such doubt, we are unwilling to impute this intent to petitioners.

*Mastrobuono*, 514 U.S. at 63; *id.* at 64 ("[T]he choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration . . . ."). Commentators agree. *See, e.g.*, George A. Bermann, *Building the Civilization of Arbitration: Ascertaining the Parties' Intentions in Arbitral Design*, 113 Penn. St. L. Rev. 1013, 1018 (2009) ("Fortunately, in the great majority of cases since *Volt*, the courts have rejected the notion that a generic choice of law clause should do anything more than import into the transaction the state's rules of substantive law – that is, the rules going to the merits of the underlying dispute.").

And all of this is buttressed by the Supreme Court's recent case *Preston*, which found that a choice of law clause did not show an intention to incorporate a California procedural rule vesting jurisdiction of a dispute in the Labor Commissioner rather than an arbitrator. *Preston*, 552 U.S. at 360-63. *See also Supreme Court Addresses* Volt*'s Choice-of-Law Trap*, 64 J. Disp. Resol. 22, *supra*. Importantly, *Preston* also abandoned the deference to state courts shown by *Volt* in contract interpretations that impinge federal rights. Like *Volt*, *Preston* reviewed the decision of a state court regarding the parties' contractual intent in adopting a choice of law clause. But unlike *Volt*, it did not decline to review that interpretation. Instead, it struck it down.

Further, at least one post-*Cronus* district court decision recognizes the continuing validity of *Wolsey*. *Johnson v. Couturier*, No. 2:05-cv-02046-RRB-KJM, 2007 U.S. Dist. LEXIS 81848, at *20-21 (E.D. Cal. Oct. 25, 2007) ("While the parties may agree to the state law rules for arbitration, the parties must *clearly* evidence their intent to be bound by such rules.") (emphasis added) (citing *Wolsey* and *Mastrobuono*).

The Court cannot ignore *Wolsey*. Nor can it ignore the common sense principle that a generic choice of law clause doesn't show agreement to be bound by a state procedural rule that departs from standard procedures under the FAA.

Defendants fail to establish that the parties agreed to be bound by Section 1281.2(c).

### 5.3    Defendants fail to meet Section 1281.2(c)'s requirements.

Even if they did intend to be so bound, Defendants also fail to meet the requirements for invoking Section 1281.2(c). Specifically, Section 1281.2(c) allows parties to avoid conflicting judgments only where there is litigation with a "third party" that is not a party to the related arbitration. Defendants do not specify who is involved in the arbitration, or whether there are "third parties" who are parties in the lawsuit but not the related arbitration. Defendants state only that "[Plaintiff] filed a Demand for Arbitration [against] Defendants." (Mot. 8:17-22.) True, Defendants filed a counterclaim against both Plaintiff and two individuals, but Defendants' moving and reply papers do not discuss whether the Counter-Defendant individuals are involved in the arbitration.

Thus, for this separate reason, Defendants cannot use Section 1281.2(c) to stay the arbitration.

### 5.4    The Court declines to exercise its discretion.

Even if the parties agreed to be bound by Section 1281.2(c), and Defendants met the Section's requirements, the Court finds that it should not exercise the discretion given by that

1  provision to stay the arbitration.  Section 1281.2(c) is "designed to deal with the special practical
2  problems that arise in multiparty contractual disputes" by letting courts "stay arbitration
3  proceedings . . . to minimize the potential for contradictory judgments."  *Volt*, 489 U.S. at 476,
4  n.5.  An admirable goal.  But Defendants do not establish a sufficient possibility of contradictory
5  judgments to warrant staying the arbitration.  For example, Defendants argue that "Plaintiff is
6  seeking injunctive relief in the arbitration proceeding, but the License Agreement which is the
7  subject of the arbitration provides no authority for the injunction.  Thus, an injunction can only
8  be issued if the arbitrator determines that Defendants are infringing the '054 patent."  (Reply
9  1:14-17.)  But Defendants ignore that, if the License Agreement doesn't provide for injunctive
10 relief, the arbitrator might simply deny the requested injunction as outside the scope of
11 arbitration.  This is not the conflicting ruling that Defendants fear.
12         Defendants make a few other arguments, but they are similarly unpersuasive.  For
13 example, Defendants argue that the License Agreement is unenforceable for lack of
14 consideration because it licenses a non-patentable product.  (Mot. 15:16-16:27.)  But, for
15 purposes of this Motion only, the Court agrees with Plaintiff's argument that "a license of a
16 patent application [may] bring many benefits, such as that the license is able . . . to secure the
17 right to continue to manufacture a product if a patent should issue [and] to gain foothold in the
18 marketplace first."  (Opp'n 7:25-8:4.)  The Court further finds, for purposes of this Motion only,
19 that even if the licensed subject matter is unpatentable, there was uncertainty on the point when
20 the parties entered into the License Agreement, and the possibility that a patent would issue is
21 sufficient consideration.
22         Thus, to the extent Section 1281.2(c) gives the Court discretion to stay the pending
23 arbitration, it declines to exercise that discretion.

**CONCLUSION**

The parties agreed to arbitrate the dispute that is being arbitrated. For multiple reasons, Defendants fail to establish that the arbitration should be stayed. The Motion is DENIED.

IT IS SO ORDERED.

DATED: May 25, 2010

_____
Andrew J. Guilford
United States District Judge